**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MAY LINDA HEYWARD; EARL SAMUEL,
Plaintiffs-Appellants,

v.

MICHAEL C. MONROE, individually
and in his official capacity as
District Director of Health

No. 97-2430

Education for the South Carolina
Department of Health and
Environmental Control; SOUTH
CAROLINA DEPARTMENT OF
HEALTH AND ENVIRONMENTAL
CONTROL,
Defendants-Appellees.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Patrick Michael Duffy, District Judge.
(CA-95-3400-23-3)

Submitted: October 27, 1998

Decided: December 7, 1998

Before ERVIN and WILKINS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hemphill P. Pride, II, Columbia, South Carolina, for Appellants.
Hardwick Stuart, Jr., William K. Witherspoon, BERRY, ADAMS,

QUACKENBUSH & STUART, P.A., Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

May Linda Heyward and Earl Samuel appeal the district court's judgment awarding summary judgment to the Defendants and dismissing their civil complaint. Heyward, who worked for the Defendant South Carolina Department of Health and Environmental Control ("DHEC"), alleged she was discriminated against because of her race and gender and retaliated against for having filed an informal complaint with the South Carolina Human Affairs Commission in violation of Title VII, 42 U.S.C.A. §§ 2000e-2000e-17 (West 1994 & Supp. 1998) ("Title VII") and 42 U.S.C. § 1983 (1994). She also alleged state law claims of breach of contract, breach of implied covenant of good faith and fair dealing, and violation of South Carolina public policy. Samuel alleged loss of consortium. Finding no reversible error, we affirm.

Heyward, a black female, was employed by the DHEC in September 1987. In November 1988, Michael C. Monroe, a white male, was given a promotion Heyward sought. Monroe became Heyward's supervisor. In March 1989, Monroe reprimanded Heyward for not meeting with him concerning her performance appraisal. Heyward was attending another meeting which Monroe had previously instructed her not to attend.

In April 1989, Heyward met with Bobby Gist of the South Carolina Human Affairs Commission and complained that Monroe was harassing her because of her race. As a result of this contact, a meeting was arranged among Monroe, Gist and Alan Pregnall, Assistant Director

2

of Personnel Services for the DHEC. Pregnall agreed to investigate Heyward's complaints and see what could be done.

In May 1991, Monroe issued Heyward an action plan in order to address proper use of her work time. Among other things, the action plan required Heyward to indicate specifically the places and persons she was visiting when she was out of the office. She was also informed that Monroe reserved the right to make unannounced visits to places where she was scheduled to be. Monroe did make such unannounced visits, and at least one other employee thought the visits were excessive. (J.A. at 105).

On January 22, 1992, Heyward notified her office that she was ill and taking the day off to go to the doctor. Heyward did not report to work for the next three work days between January 23 and January 27, nor did she contact the office. On January 27, 1992, Monroe concluded that Heyward had abandoned her job because she did not report to work or notify anyone of her whereabouts for three consecutive work days and terminated her employment pursuant to DHEC policy. Heyward contends that other similarly situated white employees were provided with notice of pending termination due to abandonment and more time to resolve the matter.

Heyward married Samuel on April 4, 1992. The instant complaint was filed in October 1995. The magistrate judge concluded that Heyward established a genuine issue of material fact as to whether her termination was based upon Heyward's gender and race. As for her retaliation claim, the magistrate judge found that Heyward failed to raise an inference of retaliation because her protected conduct occurred two years before she was disciplined. The magistrate judge also concluded that the § 1983, breach of contract, and breach of covenant of good faith claims were barred by South Carolina's three-year statute of limitations. With regard to the public policy claim, the magistrate judge recommended it be dismissed because Heyward had statutory remedies. As for the loss of consortium claim, the magistrate judge found Samuel was not entitled to relief because he was not married to Heyward at the time of the alleged injury. He also concluded the claim was barred by the three-year statute of limitations.

The district court largely adopted the magistrate judge's report and recommendation. However, it dismissed the discriminatory termina-

3

tion claims because it found Heyward was not similarly situated to those individuals who were not terminated in the same manner she was.

We review the grant of summary judgment de novo. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Summary judgment is appropriate if the pleadings and evidence of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In order to demonstrate a prima facie case of disparate disciplinary practices, Heyward must show that: (1) she is a member of a protected class; (2) the prohibited conduct in which she engaged was as serious as the misconduct of employees outside the protected class; and (3) the employer imposed harsher disciplinary measures against her than against employees outside the protected class. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).

Evidence showed that other employees were treated more leniently than Heyward. In addition to Heyward, seven other employees, one white male, one black male, two white females, and three black females were terminated for abandonment during the period of Heyward's employment. The seven employees were either given notice of pending termination or more time to resolve the matter; however, all were eventually terminated. Monroe was not involved in the termination of the seven other employees. Nor was there any evidence that any of the seven employees had a disciplinary history similar to Heyward's.

Heyward has not shown that either the two male employees or the two white female employees were similarly situated. She must show that they are similar in all relevant respects. There is no evidence that the employees "dealt with the same supervisor,[were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964

4

F.2d 577, 583 (6th Cir. 1982); see also Arambru v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997). None of the other employees were supervised or disciplined by Monroe. See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (employees were not similarly situated because they were not supervised by the same person). If different decision makers are involved, employees are generally not similarly situated. See Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 350 n.3 (7th Cir. 1997).

As far as the two white female employees are concerned, there appear to be mitigating circumstances regarding the difference in treatment, in addition to having different supervisors. One employee was on leave of absence status due to a family illness, the other employee went on medical leave without pay due to a work-related injury. Heyward, on the other hand, did not provide her employer any reason for her absence. Nor did she contact Monroe to inform him that she would not attend a meeting between the two of them scheduled for January 27.

Presuming Heyward established a prima facie case, she did not show that DHEC's legitimate reason for her termination was pretextual. Black employees were treated as leniently as white employees and female employees were treated as leniently as male employees. See Hughes v. Bedsole, 48 F.3d 1376, 1384-85 (4th Cir. 1995) (evidence that a female was treated more leniently than female plaintiff undercuts argument that reason for discipline was pretext). Thus, we conclude that summary judgment was appropriate on this claim.

Turning to Heyward's claim of retaliation for having complained to South Carolina Human Affairs Commission in April 1989, in order to establish a prima facie case of retaliation, Heyward must prove that: (1) she engaged in a protected activity; (2) adverse employment action was taken against her; and (3) a causal connection existed between the protected activity and the adverse action. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

We find this claim fails because Heyward's complaint occurred two years prior to her termination. See Carter , 33 F.3d at 460 (temporal proximity between protected activity and adverse employment decision is element of causality). Moreover, there is no evidence link-

5

ing the protected activity with the adverse employment decision. The evidence of any on-the-job harassment, beyond Heyward's conclusory statements, is slight.

With regard to Heyward's § 1983 claims, there is no federal statute of limitations for § 1983 actions; the analogous state statute governing personal injury actions applies. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). The statute of limitations for such causes of action arising in South Carolina is three years. See S.C. Code Ann. § 15-3-530(5) (Law. Co-op. Supp. 1997). Heyward's action accrued when she was terminated on January 27, 1992. She did not commence this action until more than three years later, in October 1995.

Heyward contends that because the parties were in negotiations prior to the commencement of the action, the doctrine of equitable estoppel prevents the Defendants from asserting a statute of limitations defense. In applying the state statute of limitations, the court must also apply state principles of tolling to that limitation period. See Board of Regents v. Tomanio, 446 U.S. 478, 485-88 (1980).

The Defendants may be estopped from claiming a statute of limitations defense if the delay is induced by the Defendants' conduct. This may consist of either an express representation that the claim will be settled without litigation or by conduct suggesting a lawsuit is unnecessary. See Vines v. Self Memorial Hosp., 443 S.E.2d 909, 911 (S.C. 1994). Settlement negotiations alone do not bar a statute of limitations defense. Id. We agree with the district court that there is no evidence supporting Heyward's contention that the Defendants made an express representation that the claim would be settled. Accordingly, Heyward's § 1983 claims are barred by the statute of limitations. Likewise, the three-year statute of limitations bars Heyward's breach of contract and breach of covenant of good faith claims. See § 15-3-530(1).

We also find that Heyward's public policy claim was appropriately dismissed. South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case. See Dockins v. Ingles Mkts., Inc., 413 S.E.2d 18, 18 (S.C. 1992).

6

Finally, we find Samuel's action for loss of consortium also barred by the three-year statute of limitations. His cause of action accrued when he possessed "sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." See Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). Even assuming Samuel could not maintain this action until he was married, see S.C. Code Ann. § 15-75-20 (Law. Co-op. 1977),* his own affidavit reveals that the cause of action accrued on April 4, 1992, the date he and Heyward married. (R. 24). Since he did not bring this action until October 1995, it is time barred.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

_____
*Section 15-75-20 permits a person to maintain a cause of action for damages arising out of the loss of the right to companionship with their spouse.

7